1
2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

3
4

UNITED STATES OF AMERICA                    PLAINTIFF

5

VS.                                    NO. 2:08CR110

6
7

NEAL ALLAN THOMAS                          DEFENDANT

8

9

CHANGE OF PLEA

10

BEFORE HONORABLE SHARION AYCOCK

11
12

Federal Building, Aberdeen, Mississippi
January 13, 2009

13

14
15

APPEARANCES:

16
17

For the Government:  PAUL ROBERTS, Esquire
                     Oxford, MS

18
19

For the Defendant:   KEVIN PAYNE, Esquire
                     Oxford, MS

20

21

22

23
24

Reported by:  PHYLLIS K. McLARTY, FCRR, RMR, CSR
              Official Court Reporter

25

1    (10:45 A.M.)

2         **THE COURT:**  You may call the case.

3         **THE CLERK:**  The Court calls Case Number 2:08CR110,

4    <u>United States of America v. Neal Allan Thomas</u>, for change of

5    plea.

6         **THE COURT:**  Thank you.  Representing the government

7    this morning is Paul Roberts.  Thank you, Mr. Roberts, for

8    being here.  Representing the defendant in this case is Kevin

9    Payne.  Thank you, Mr. Payne.

10        The Court has before it Neal Allan Thomas in this case

11   here today for a change of plea, entering a plea.

12   Ms. Sullivan, would you please administer the oath to

13   Mr. Thomas?

14       (DEFENDANT WAS SWORN BY THE CLERK)

15   **NEAL ALLAN THOMAS, DEFENDANT, AFTER BEING DULY SWORN BY THE**

16            **CLERK, WAS EXAMINED AND TESTIFIED AS FOLLOWS:**

17                        **EXAMINATION**

18   **BY THE COURT:**

19   **Q.**   Mr. Thomas, do you understand that you are now under

20   oath, and if you answer any of my questions falsely, that your

21   answers may later be used against you in another prosecution

22   for perjury or for making false statements?

23   **A.**   Yes, Your Honor.

24   **Q.**   Do you understand that you have the right to remain

25   silent and not answer any of my questions in this proceeding?

**A.**    Yes, Your Honor.

**Q.**    And the Court is advised that you wish to enter a plea of guilty to what is Count 1, making a threat to take the life of or inflict bodily harm upon the President of the United States. Is that correct?  Is that the reason that you're appearing before the Court this morning, is for purposes of entering that plea?

**A.**    Yes, Your Honor.

**THE COURT:**  Counsel, I do understand that a plea agreement has been signed.  The plea agreement is dated December the 30th, 2008.  It appears to be signed by Mr. Greenlee and counsel for the defendant and Mr. Thomas as well.  It will become a part of this record in this proceeding. And, Mr. Thomas, I'll have some questions for you regarding that plea agreement later.

**THE COURT:**  **(Continuing)**

**Q.**    But, Mr. Thomas, before I accept your plea, I must be certain that you are fully informed of your rights, that you understand the rights and the nature of this proceeding.  It's very important that you understand the consequences of you entering a plea in this proceeding, so I am going to ask you some questions.

If at any time during this proceeding I ask you a question and you don't understand my question, don't answer it. Ask me to explain it or ask me to state it differently.  If I

ask you a question and before answering me you wish to confer

with your attorney, you may do so in every instance.  You

simply state to me that you wish to confer with your attorney,

and I assure you that I'll give you that right.

It's very important that you speak up loudly and plainly

so we can hear you on the record.  Do you understand your

directions?

**A.**    Yes, Your Honor.

**Q.**    State for me, please, your full name and your age.

**A.**    Neal Allan Thomas, age 20.

**Q.**    And how many years of school have you completed?

**A.**    12.

**Q.**    So you graduated from high school?

**A.**    Yes, Your Honor.

**Q.**    Do you have any college courses or any college degrees?

**A.**    Not yet, Your Honor.

**Q.**    Were you -- are you in college?

**A.**    I'm not in college, Your Honor.  I do plan on it.

**Q.**    Are you presently under the influence of any drugs,

medicine, or alcohol that would impair your ability to

understand this proceeding?

**A.**    No, Your Honor.

**Q.**    Have you been treated for any mental illnesses or

psychiatric illnesses?

**A.**    In Houston, Your Honor.

**Q**.   And are you addicted to any drugs?  Have you been treated
for any drug addictions?

**A**.   No, Your Honor.

**Q**.   Let me talk to you about the medications that you're
taking at this time.  Tell me what medications have been
prescribed by physicians that you're taking.

**A**.   I'm not currently taking any medications, Your Honor.  I
was once prescribed with Ritalin, and later on prescribed with
Adderall and Risperdal.

**Q**.   Did you cease taking those medications prior to being
charged in this instance?

**A**.   Yes, Your Honor, about one year.

**Q**.   Okay.

      **MR. PAYNE:**  Your Honor, if I may, I think that the
records would show that there was some treatment several years
back, that he was at one time also prescribed Zyprexa, and he
was seeing some doctors in Olive Branch and in the Memphis
area.

**THE COURT:**   (Continuing)

**Q**.   Is that correct, Mr. Thomas?

**A**.   Yes, Your Honor.

**Q**.   Very well.  Now, do you suffer, in your opinion, from any
condition or disability that you believe would prevent you from
fully understanding the charges as well as -- or, in this case,
I should say, the charge.  It's only Count 1.  Anything that

1 would preclude you from understanding the charge as well as the
2 consequences of this proceeding?

3 **A.**    I don't believe any illness would prevent me from
4 understanding the nature of this charge, Your Honor.

5       **THE COURT:**  Mr. Payne, I know you have conferred at
6 length with your client.  Do you have any concerns about his
7 competency for purposes of entering this plea?

8       **MR. PAYNE:**  Your Honor, if I may, in addition to
9 consulting with him, I would also mention to the Court that
10 there has been an evaluation conducted in this case.  The
11 doctor, Dr. Angelilo, at the conclusion of that examination,
12 concluded that he was competent, Your Honor.  And in my
13 interviews with him and conversations with him, I have nothing
14 at this point to cause me to question his competency, Your
15 Honor.

16       **THE COURT:**  Thank you, Mr. Payne.

17       Based upon the representations made by the defendant,
18 as well as counsel, and the Court, having reviewed the
19 psychiatric report, and -- indeed of the opinion that the
20 doctor has expressed his belief that Mr. Thomas is competent
21 for purposes of this plea, that I'm going to find that you're
22 competent for entering the plea and proceed.

23 **THE COURT:**   (Continuing)

24 **Q.**    Do you understand, Mr. Thomas, that you have the right to
25 maintain your plea of not guilty?

**A.**    Yes, Your Honor.

**Q.**    Have you had an ample opportunity to discuss your case with Mr. Payne?

**A.**    Yes, Your Honor.

**Q.**    Do you believe that Mr. Payne has adequately represented you?  Has he represented, in your opinion, your best interest in this case?

**A.**    Yes, Your Honor.

**Q.**    Do you understand that, under the constitution and the laws of the United States, that you're entitled to a speedy and public trial by jury on this charge?

**A.**    Yes, Your Honor.

**Q.**    Do you understand that you have the right to assistance of counsel for your defense?

**A.**    Yes, Your Honor.

**Q.**    If you could not afford counsel, the Court would appoint counsel for you free of charge to assist you at every stage of the proceeding.  You understand that right?

**A.**    Yes, Your Honor.

**Q.**    Do you understand that, at a trial, you would be presumed innocent of the charge?  In other words, the government would have to prove you guilty beyond a reasonable doubt before you could be found guilty of Count 1.  Do you understand that you would not be required to prove your innocence otherwise -- or instead, I should say, the government would be required to

1 prove this case against you beyond a reasonable doubt?

2 **A.** Yes, Your Honor.

3 **Q.** Do you further understand that, in the course of the

4 trial, that the government -- if you went to trial before a

5 jury, that the government would put on witnesses, and you would

6 have, through your lawyer, the opportunity to cross-examine

7 those witnesses?  At the conclusion of the government's case of

8 all of its witnesses and exhibits against you, your lawyer

9 would have the right -- if you desired, you could be called to

10 the -- you could take the stand and testify, your lawyer could

11 put on witnesses in your behalf, and it's in this manner that

12 there would be a trial and that ultimately the jury would

13 determine your guilt or your innocence.  Do you understand

14 that?

15 **A.** Yes, Your Honor.

16 **Q.** Do you understand that you would not -- that the

17 government could not call you as a witness, you could not be

18 forced to testify in this case against yourself?  Do you

19 understand that?

20 **A.** Yes, Your Honor.

21 **Q.** On the other hand, do you understand that you would have

22 the right to take the stand?  If you decide to take the stand

23 and testify, that you would be free to do that?

24 **A.** Yes, Your Honor.

25 **Q.** Do you also understand that if you went to trial and you

1  were convicted, that you would have the right to appeal both

2  the conviction and any sentence that the Court imposed in this

3  case?

4  **A.**    Yes, Your Honor.

5  **Q.**    On the other hand, if you plead guilty here today and I

6  accept your plea, do you understand that you have entered that

7  plea, and you're guilty of Count 1, and you'll be sentenced

8  after I receive a presentence report just as if you had had a

9  trial and had been found guilty of Count 1?

10  **A.**    Yes, Your Honor.

11  **Q.**    Do you have any questions about these rights that I have

12  read to you?

13  **A.**    No, Your Honor.

14  **Q.**    Have you discussed these matters with your attorney?

15  **A.**    Yes, Your Honor.

16  **Q.**    And having discussed them with your attorney and

17  representing to me that you understand them, do you wish to

18  proceed to enter your plea today?

19  **A.**    Yes, Your Honor.

20  **Q.**    I have received a copy of the indictment, and I'm certain

21  that you have as well, and I'm going to ask you to take a look

22  at the indictment.  This is the indictment of Count 1 where it

23  does charge you with making a threat on the president's life or

24  attempting to -- or a threat, I should say, to inflict bodily

25  injury upon the president.  Have you read the indictment?

1    A.    Yes, Your Honor.

2    Q.    Do you understand the indictment?

3    A.    Yes, Your Honor.

4    Q.    You understand the charge then?

5    A.    Yes, Your Honor.

6    Q.    The Court could read it to you in its entirety, or I will

7    ask you if you desire for the reading of the indictment to be

8    waived.

9    A.    To be waived, please, Your Honor.

10   Q.    Representing to me that you fully understand the charge?

11   A.    Yes, Your Honor.

12   Q.    The government would be required to prove certain

13   elements of this indictment.  At this time, I'm going to ask

14   Mr. Roberts if he would explain to you what the government must

15   prove and the nature of this case.

16          MR. ROBERTS:  Your Honor, for the defendant to be

17   found guilty, the government would have to prove, first, that

18   the defendant wrote the words alleged to be the threat against

19   the president as charged in Count 1 of the indictment; second,

20   that he understood and meant the words as a threat; and, third,

21   that he wrote the words knowingly and willfully.

22   THE COURT:   (Continuing)

23   Q.    Do you understand the elements of this offense,

24   Mr. Thomas?

25   A.     Yes, Your Honor.

1  **Q.**    At this time, I'm going to also explain to you the

2  possible penalties that are applicable to this case.  My

3  understanding is that Count 1 carries a penalty -- statutory

4  penalty of not more than 5 years' incarceration, not more than

5  3 years' supervised release, not more than a 250,000-dollar

6  fine, and it requires a payment of a 100-dollar special

7  assessment.  Do you understand the applicable penalty in this

8  case?

9  **A.**    Yes, Your Honor.

10 **Q.**    Do you understand that you may be ordered to pay

11 restitution if it's applicable in this case?  And I have no

12 reason to believe that it is, but if it were applicable, do you

13 understand, as part of the sentencing, you could be ordered to

14 pay restitution?

15 **A.**    Yes, Your Honor.

16 **Q.**    Do you also understand that if you were sentenced to

17 serve a time in prison, that following your prison term, you

18 could be ordered to be placed on supervised release up to a

19 period of three years?

20 **A.**    Yes, Your Honor.

21 **Q.**    Do you understand that if you were on supervised release

22 and you violated a term of your supervised release, you could

23 be ordered back to serve some or all of your prison term?

24 **A.**    Yes, Your Honor.

25 **Q.**    Do you have any questions about the penalties that are

applicable?

**A.** No, Your Honor.

**Q.** Earlier, I mentioned to you, Mr. Thomas, that a plea agreement by you and the government had been agreed upon and filed in this case. I want you to take a look at the plea agreement. First of all, on the last page, would you represent to me on the record whether or not that is indeed your signature on the agreement?

**A.** Yes, Your Honor.

**Q.** And it is so very important that your understanding of the terms of the plea agreement be exactly the understanding of the government's understanding. What I'm going to ask Mr. Roberts to do is read the essence of this agreement to you. I'm certain that you have read it before. Have you not?

**A.** Yes, Your Honor, I have.

**Q.** I'm going to ask him to go over the substantial terms of the agreement so that you may ask any questions that you have about the agreement; otherwise, represent to me that you understand the agreement and that your understanding is the same as the government's.

**THE COURT:** Mr. Roberts, you may proceed.

**MR. ROBERTS:** Your Honor, the defendant agrees to plead guilty to Count 1 of the indictment, as explained to him previously by the Court just now. The United States agrees not to charge the defendant with any other offenses arising from or

1    related to that charge in Count 1.

2    There is, Your Honor, a binding plea agreement as to a

3    sentencing guideline enhancement.  The parties agree, pursuant

4    to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure,

5    that the six-point enhancement prescribed under Section

6    2A6.1(b)(1) of the U.S. Sentencing Guidelines does not apply to

7    the defendant's underlying conduct or what he did in this case.

8    And, Your Honor, what that is, is there is a guideline

9    enhancement if there is a step taken toward furthering the

10   crime, acting out on the threat.  And as the factual basis will

11   make clear, at a certain point, he was being questioned, and he

12   fled to North Carolina.  And we're agreeing that that flight

13   does not constitute a step toward completing or attempting to

14   complete the crime.

15   So the parties agree that that sentence -- that

16   sentencing enhancement does not apply to the defendant's

17   underlying conduct, and that's by a binding plea agreement,

18   Your Honor.

19   There is no other agreement as to the sentence to be

20   imposed, which will be in the discretion of the Court subject

21   to the Federal Sentencing Guidelines and the statutory

22   considerations of Section 3553, Title 18, United States Code.

23   And, again, since it's a binding agreement, the

24   parties agree that should the Court not accept the restriction

25   on the use of the enhancement, that the defendant will be

allowed to withdraw his guilty plea in that case and proceed to trial if he so chooses.  Both parties reserve their right to speak at sentencing in the case.

The defendant agrees to pay to the Clerk of the Court prior to sentencing the mandatory 100-dollar special assessment fee for each count to which he pleads guilty.

The parties agree that the agreement does not bind any prosecuting authority of any state or other federal district and that it does not bind the Attorney General in regard to any tax matters.  I will represent we're not aware of any other charges from any state or any other federal district.

The defendant agrees that if he violates the plea agreement, statements made by him pursuant to the plea agreement will be admissible against him, and he waives the provisions of the Federal Rules of Criminal Procedure and Evidence to the contrary, and recognizes that if he violates the plea agreement, he could be prosecuted for all federal offenses committed, including the making of false statements or perjury.

Your Honor, there is also an acknowledgment in which the defendant acknowledges that no promise or representation has been made to the defendant as to what punishment the Court will impose if it accepts the guilty plea, other than the binding agreement as to the sentencing enhancement; that the plea agreement reflects all promises, agreements, and

understandings between him and the U.S. Attorney; that the agreement is knowing, free, and voluntary, and is not the product of force, threat, or coercion. He also acknowledges that he's pleading guilty because he is, in fact, guilty of the charge in Count 1.

    **THE COURT:** Very well. Thank you, Mr. Roberts.

**THE COURT: (Continuing)**

**Q.** Mr. Thomas, did you understand what Mr. Roberts stated?

**A.** Yes, Your Honor.

**Q.** Did he, in your opinion, state the plea agreement and the terms of the agreement accurately?

**A.** Yes, Your Honor.

**Q.** Did you discuss the contents of this agreement with your attorney before you executed the agreement?

**A.** Yes, Your Honor.

    **THE COURT:** Mr. Payne, did you discuss it with your client? In fact, did you review the facts of the case, any discovery that you had? Have you discussed all of those things prior to Mr. Thomas entering into this plea agreement?

    **MR. PAYNE:** Your Honor, we have reviewed those materials, and we've discussed his case at length prior to entering into this agreement. And we did discuss the content of the actual agreement in detail as well.

    **THE COURT:** Thank you. Do you believe, Mr. Payne, that your client is entering into the agreement freely and

1  voluntarily with full knowledge of the charges and the

2  consequences of the plea?

3        **MR. PAYNE:** I do, Your Honor.

4  **THE COURT:** **(Continuing)**

5  **Q.** Mr. Thomas, has anyone made any promises to you about

6  what the sentence will be in this case?

7  **A.** I've heard about a Federal Sentencing Guideline, which an

8  upward departure -- went from Level 12 to Level 15. And what

9  I've heard, upon this plea agreement, it would be brought down

10 to Level 13, which the sentencing -- in the Federal Sentencing

11 Guidelines is 12 to 18 months.

12 **Q.** You seem to have a very good understanding of the

13 guidelines, and it's apparent to me that you have had those

14 conversations with Mr. Payne, and he has discussed with you

15 that the Court does have a guideline or a range to go by. But

16 my question to you is: Have you been assured, have you been

17 promised or guaranteed a sentence out of this, or stated

18 conversely, do you understand that this agreement places that

19 matter of sentencing solely in the discretion of the Court?

20     (DEFENDANT CONFERRING WITH HIS ATTORNEY OFF THE RECORD)

21 **A.** Yes, Your Honor, I do understand that.

22 **THE COURT:** **(Continuing)**

23 **Q.** Tell me what that is.

24 **A.** It's solely your decision on what my sentence is.

25 **Q.** Thank you. Under the Sentencing Guidelines and

1  Sentencing Reform Act of 1984, the Sentencing Commission has

2  issued the guidelines that we've made reference to for judges

3  to follow in determining sentences in criminal cases.  And it's

4  apparent to me -- and you've just acknowledged that you and

5  your attorney have had this discussion about the applicability

6  of the guidelines in your case.

7        But, Mr. Thomas, do you understand that the Court will

8  not be able to make a determination of the sentencing guideline

9  in your case until after a presentence report has been

10 conducted, and at which point that the probation office

11 conducts that investigation and prepares that report, do you

12 understand you would be given a copy of that report, you and

13 your lawyer, and that you would have an opportunity to

14 challenge findings of that report?

15 **A.**    Yes, Your Honor.

16 **Q.**    Do you understand that after your guideline has been

17 determined, that the Court will have the authority to depart

18 from the guidelines and impose a sentence that may be more

19 severe than the guidelines indicate or less severe than the

20 guidelines?

21 **A.**    Yes, Your Honor.

22 **Q.**    Do you understand that, regardless of the guidelines

23 range, I may sentence you based upon the Court's sole

24 discretion?

25 **A.**    Yes, Your Honor.

**Q.**    At this time, Mr. Thomas, I want you to listen very carefully, because I'm going to ask Mr. Roberts to recite to you the factual basis for this charge in this indictment, understanding, Mr. Thomas, if you were before a court, before a jury, you were being tried, these are the facts that the government would be required to prove beyond a reasonable doubt against you.

          **THE COURT:**  You may proceed, Mr. Roberts.

          **MR. ROBERTS:**  Your Honor, the government would show that on May 16, 2008, the defendant, Neal Allan Thomas, posted on his MySpace account the following message:

          "Enough with the info.  I feel like my head is about to explode.  We don't need any more info.  We know that we are headed for a nightmare beyond our wildest dreams.  We know that King George Bush needs to be removed from power, and people say we need to act now by peacefully protesting or calling our congressmen to say that we're against a certain law that's about to be enacted.  A significant change in government is never achieved by peaceful means.  Blood has always been shed before change happens.  If you really want change, grab your gun and your friends who are also Ron Paul supporters, truth seekers, and freedom fighters.  We must storm Washington, D.C., and remove the entire executive branch from power.  I doubt they'll just give up their seats.  And if that's the case, they must be killed.

1        "My brother in arms, stop posting bulletins.  Get off

2  your ass, grab your guns, and start killing those who need to

3  be killed before it's too late.

4        "And don't be afraid to die doing it.  Hundreds of

5  thousands will die.  Casualties are unavoidable in war."

6        The evidence would show that in August, the Olive

7  Branch, Mississippi Police Department were -- contacted the

8  United States Secret Service about the defendant and alleged

9  threats he had made against the President of the United States

10  that had been reported to the police department by Thomas'

11  friend, Joshua Pendergrass.  Police officers had attempted to

12  contact Thomas regarding Mr. Thomas' alleged taking over

13  Pendergrass' MySpace account and posting threatening e-mails.

14        Secret Service agents eventually obtained search

15  warrants for Pendergrass' and Thomas' MySpace accounts and

16  found the threatening postings, including the post that was

17  just described.  And the evidence would show that it posted on

18  MySpace on May 16, 2008, approximately 11:41 a.m.

19        Secret Service agents and the Olive Branch Police

20  Department attempted to interview the defendant, Mr. Thomas,

21  only to discover that he had fled on his moped.  The

22  defendant's father had discovered an assault-type rifle that

23  Mr. Thomas had purchased and seized it prior to his flight.  So

24  Thomas had only taken a laptop computer with him when he fled.

25        The defendant, Mr. Thomas, was eventually discovered

in North Carolina.  He was questioned in Lake Lure, North
Carolina, by a sheriff's deputy.  He admitted that he had
purchased an SKS rifle and 40 rounds of ammunition.  He
admitted to the deputy that he did not trust the current
political administration, thought it should be removed, but
alleged that he believed it should be done by impeachment, not
by violence.  He did admit posting to Mr. Pendergrass' MySpace
page, but denied making any threats.

His father went to North Carolina, took him back
and -- brought him back to Olive Branch where officers
questioned him.  He admitted fleeing Mississippi when he
learned that the Department of Homeland Security or United
States Secret Service Division of that department sought to
interview him.  He stated to them that he might have posted
threatening messages on his MySpace pages, but did not remember
specifically doing so.

He admitted that he had become affiliated with militia
groups that advocated the overthrow of the U.S. Government.  He
admitted downloading a manual on making improvised explosive
devices, but denied any intention of blowing up government
buildings or attacking the president with such.

The defendant gave verbal consent to view his MySpace
accounts, gave the names and passwords to such.  And the agents
confirmed the accounts contained information that coincided
with the defendant's beliefs about the government.

1          Finally, the government would show by judicial notice

2     that Olive Branch, DeSoto County, Mississippi, where Mr. Thomas

3     sent the May 16th posting from to his MySpace account, is

4     within the Northern Judicial District of Mississippi.

5     **THE COURT:   (Continuing)**

6     **Q.**     Do you understand what the prosecutor said, Mr. Thomas?

7     **A.**     Yes, Your Honor.

8     **Q.**     Is everything the prosecutor said about you or your

9     conduct true and correct?

10    **A.**     Yes, Your Honor.

11    **Q.**     Are you voluntarily pleading guilty on your own free will

12    because you are, in fact, guilty of the conduct set forth in

13    this factual basis?

14    **A.**     Yes, Your Honor.

15    **Q.**     Has anyone threatened you or any of your family members,

16    in any way threatened you in order to force you to enter this

17    plea?

18    **A.**     No, Your Honor.

19    **Q.**     Do you understand that, under some circumstances, you

20    and/or the government may have the right to appeal any sentence

21    that I later impose in this case?

22    **A.**     Yes, Your Honor.

23          **THE COURT:**  Counselors, do either of you wish for me

24    to make any further inquiry under Rule 11?  Mr. Roberts?

25          **MR. ROBERTS:**  No, Your Honor, not from the government.

1    **THE COURT:**  Mr. Payne?

2    **MR. PAYNE:**  No, Your Honor.

3    **THE COURT:**  **(Continuing)**

4    **Q.**    Now, Mr. Thomas, I'm about to ask you about entering your

5    plea.  Before I do so, I want to ask you if you have any

6    questions about any of the questions or statements that have

7    been made as part of this record.

8    **A.**    I do not have any questions, Your Honor.

9    **Q.**    Do you desire -- before I ask you for your plea, do you

10   desire to have a conference with your attorney?

11   **A.**    No, Your Honor.

12   **Q.**    Very well.  In the matter of the United States v. Neal

13   Allan Thomas, in Criminal Case Number 2:08CR110, do you plead

14   guilty or not guilty to Count 1 of the indictment?

15   **A.**    Guilty, Your Honor.

16   **Q.**    Thank you, sir.

17       **THE COURT:**  It is the finding of the Court in this

18   case that the defendant is fully competent and capable of

19   entering an informed plea, that the defendant is aware of the

20   nature of the charges and the consequences of the plea, and

21   that the plea of guilty is a knowing and voluntary plea

22   supported by an independent basis in fact containing each of

23   the essential elements of the offense.

24       The Court further finds it is not a result of any

25   force, threats, or promises.  The plea is therefore accepted,

1   and you are now adjudicated guilty of Count 1 of the

2   indictment.

3         Mr. Thomas, your sentencing will likely be 45 to

4   60 days from this date.

5         Counselors, you'll have to refresh my memory about his

6   status.  He's been in custody.  Is he remaining in custody?

7         **MR. ROBERTS:**  Yes, Your Honor.

8         **PROBATION OFFICER:**  Yes, Your Honor.  He has been

9   detained since his arrest on October 31st, 2008.

10         **THE COURT:**  Thank you, Ms. Prowell.

11         The Court is going to remand you to the U.S. Marshal

12   Service, where you will remain in custody until sentencing.

13   Your lawyer will contact you regarding that sentencing date.

14   You will have an opportunity to review that presentence report,

15   as I've already suggested.

16         Before we go off the record, do you have any

17   questions, Mr. Thomas?

18         **THE DEFENDANT:**  I was arrested on September 4th, 2008,

19   Your Honor.  Is that something that would be in the PSI report

20   or -- you spoke of objecting to anything in there if I find it

21   objectionable?

22         **THE COURT:**  You will, through your attorney, raise

23   those objections.

24         **THE DEFENDANT:**  Okay.  Thank you, Your Honor.  I have

25   no further questions.

1       **THE COURT:**  Any further questions?

2       **THE DEFENDANT:**  No further questions, Your Honor.

3       **THE COURT:**  Thank you.  This concludes this matter,

4  counselors.

5       (11:10 A.M.)

# CERTIFICATE

I, Phyllis K. McLarty, FCRR, RMR, CSR, Official Court Reporter for the United States District Court, Northern District of Mississippi, was present in court during the foregoing matter and reported said proceedings stenographically.

I further certify that thereafter, I, Phyllis K. McLarty, FCRR, RMR, CSR, have caused said stenographic notes to be transcribed via computer, and that the foregoing 24 pages are a true and accurate transcription to the best of my ability.

Witness my hand, this 28th day of April, 2009.

/s/ Phyllis K. McLarty
PHYLLIS K. McLARTY, FCRR, RMR, CSR
Official Court Reporter